IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE HATHAWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 C 5848 |
| | ) |
| NEW DIMENSION CENTER FOR | ) |
| COSMETIC SURGERY, DR. | ) |
| DAVID ROSS M.D.S.C., and | ) |
| DR. DAVID ROSS, an individual, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Jacquelyn Hathaway's ("Hathaway") motion for damages and Defendant David A Ross, M.D.S.C.'s ("Ross") motion to strike. For the reasons stated below, we grant in part and deny in part Hathaway's motion for damages, and deny as moot Ross' motion to strike.

## BACKGROUND

Hathaway filed the instant action in August 2003, claiming that her former employer, Ross, had terminated her employment due to her pregnancy in February 2002, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq.* On April 13, 2006, a jury returned a verdict in favor of Hathaway on her Title VII claim, and awarded to Hathaway $170,000 in total compensatory damages and $700,000 in punitive damages. The parties agreed that any request for equitable damages, including damages that do not fall within the definition of compensatory damages under 42 U.S.C. § 1981a, would be determined by the court rather than the jury. Hathaway has moved for certain equitable damages.

## DISCUSSION

I. Compensatory and Punitive Damages

Under 42 U.S.C. § 1981a(b)(3), a plaintiff who prevails in a Title VII suit is subject to a statutory cap on her damages award. Specifically, a prevailing plaintiff may only recover $50,000 total in punitive damages and compensatory damages that fall under 42 U.S.C. § 1981a(b)(3) from employers of more than fourteen and less than 101 employees. 42 U.S.C. § 1981a(b)(3). To recover punitive damages, the plaintiff must show that the defendant acted "with malice or with reckless indifference to the federally protected rights of" the plaintiff. 42 U.S.C. § 1981a(b)(1). In the instant action, the parties agree that Ross had between fourteen and 101 employees, and therefore Hathaway is subject to the $50,000 damages cap. The jury in this case awarded a total of $170,000 to Hathaway in compensatory

damages, which was allocated as follows: Emotional Pain ($10,000), Suffering ($10,000), Inconvenience ($35,000), Mental Anguish ($10,000), Loss of Enjoyment of Life ($35,000), and Past Monetary Losses, including medical bills and real estate losses ($70,000). The jury also awarded Hathaway $700,000 in punitive damages. Of the total award of $170,000 in compensatory damages, only the $70,000 award for Past Monetary Losses is not subject to the damages cap. Thus, Hathaway may recover this entire $70,000 award. The remaining $100,000 in compensatory damages and $700,000 in punitive damages, totaling $800,000, awarded by the jury is subject to the $50,000 damages cap. Therefore, Hathaway is entitled to $50,000 of the $800,000 award.

Hathaway requests that the $50,000 award be considered to be punitive damages rather than compensatory damages, and Ross does not object to this. (Resp. 20); *see also Lust v. Sealy, Inc.*, 383 F.3d 580, 589 (7th Cir. 2004)(stating that 42 U.S.C. § 1981a(b)(3) "does not prescribe a method for making this adjustment and we have upheld a decision that took the entire cut out of the award of punitive damages and another that took the entire cut out of the award of compensatory damages").

Although Ross agrees that Hathaway may take her entire $50,000 award as punitive damages instead of compensatory damages, Ross, however, argues that Hathaway should not be entitled to recover any punitive damages because the verdict form regarding the issue of punitive damages did not specifically contain a

3

question asking whether the jury found that Ross acted maliciously or with reckless indifference. Ross' argument is without merit. The court properly instructed the jury both orally and in writing on what Hathaway needed to show to recover punitive damages, and Ross accepted both the jury instructions and the verdict form after a conference with the court. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500 (7th Cir. 2000)(holding in regard to jury instructions that "[w]hen lawyers fail to draw the court's attention to a preventable problem, they must bear the consequences of forfeiture"). Ross has not cited any controlling precedent that holds that a verdict form must specifically ask whether the jury finds that the defendant acted maliciously or with reckless indifference. Therefore, we award Hathaway $50,000 in punitive damages, and $70,000 in compensatory damages that do not fall under the statutory cap as discussed above.

II. Back Pay Damages

Hathaway has requested an award of back pay in the amount of $186,689.91. The Seventh Circuit has stated that a "district court has broad equitable discretion to fashion back pay awards to make the Title VII victim whole [and that] [o]nce the district court [finds] unlawful discrimination in violation of Title VII, there [is] a strong presumption that [a plaintiff is] entitled to a back pay award on the basis of what she would have earned absent the discrimination." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1579 (7th Cir. 1997). The Seventh Circuit has also

made it clear that "the plaintiff has the burden of proving the damages caused [to] her [and that such damages should be] determined by 'measuring the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant.'" *Horn v. Duke Homes*, 755 F.2d 599, 606 (7th Cir. 1985)(quoting *Taylor v. Philips Indus., Inc.*, 593 F.2d 783, 786 (7th Cir. 1979)).

Hathaway argues that her back pay award should be based on her 2000 earnings that she earned while working for Ross, rather than her more recent 2001 or 2002 earnings from Ross. Hathaway also argues that her earnings would have continued to grow over time, and that her back pay should not be lowered by the unemployment benefits she received or the period of unpaid maternity leave she would have taken if she had been employed by Ross. In determining the proper award of back pay, a court must make sure that any award is not speculative and does not put the plaintiff in a better position than she was before her termination. *See Ilona.*, 108 F.3d at 1580 (quoting *United States v. City of Chicago*, 853 F.2d 572, 575 (7th Cir. 1988) for the idea that "[t]he court must 'do its best to recreate the conditions and relationships that would have existed if the unlawful discrimination had not occurred'"). In this case, we agree that the wages Hathaway earned in the early months of 2002, before she was terminated in February, are not necessarily indicative of what her salary would have been over the entire year. We also agree that Hathaway provided evidence at trial showing that her 2001 wages also do not

properly represent her salary at Ross because in 2001, Ross stopped doing the extensive advertising that it had done in prior years. Therefore, we will base Hathaway's award of back pay on her 2000 salary, which was $49,653.00

Hathaway also states in her memorandum in support of her motion for damages that "the Court may reasonably find that Plaintiff's earnings would have continued to grow had she not been terminated . . . ." (Mot. 4). The evidence at trial showed that Hathaway's salary increased each year from 1997 to 2000, and only decreased in 2001, when Ross stopped advertising Hathaway's services. Therefore, we find that Hathaway has sufficiently established that her salary would have increased annually during the period of time for which she is eligible for back pay. Thus, we apply a fifteen percent annual increase to Hathaway's salary when determining her back pay award.

Hathaway argues that "courts typically hold that back pay is not reduced by unemployment." (Rep. 15). The Seventh Circuit has stated that courts should not provide a " setoff of pension and unemployment benefits against Title VII and ADEA back pay awards." *E.E.O.C. v. O'Grady*, 857 F.2d 383, 390 (7th Cir. 1988). Deducting the unemployment benefits that Hathaway received from the amount of back pay owed to her by Ross would only serve to provide Ross with a windfall in exchange for its discriminatory actions. Accordingly, Hathaway's award of back pay is not offset by the unemployment benefits that she received after her termination.

Ross argues that Hathaway's back pay award should not include the ten weeks that Hathaway would have been unavailable to work due to her pregnancy. However, Hathaway would have been eligible for six weeks of maternity leave and had already accumulated two weeks of paid vacation time when she was terminated. In addition, Hathaway presented evidence at trial that showed that after her termination, she was diagnosed with pre-eclampsia, a medical condition that can be caused by stress. This condition required Hathaway to be on extra bed rest. Therefore, based upon the foregoing, we find that Hathaway's award of back pay should not be reduced by the ten weeks that Hathaway would have been unavailable to work due to her pregnancy. We also find that any amounts that Hathaway earned from other employment after her termination should be deducted from the award of back pay to which Hathaway is entitled. *See Horn*, 755 F.2d at 606 (citing *Taylor, Inc.*, 593 F.2d at 786, for the idea that back pay is "determined by 'measuring the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant'"). The amount of Hathaway's earnings from other employment until December 2003, when Ross ceased to operate as a business, totals $18,514.00.

Ross raises three final arguments in regard to the issue of a back pay award. First, Ross argues that Hathaway's award of back pay should be reduced due to Hathaway's failure to mitigate her damages. Ross admits in its response brief, however, that Hathaway looked for similar employment for six to nine months

before going to work for her mother, and that Hathaway posted her resume on several job search web sites. (Resp. 9). In addition, Ross admits in its response brief, in relation to an award of front pay, that Hathaway found "comparable employment" by 2004. (Resp. 16). Therefore, we find that Ross has not shown that Hathaway failed to mitigate her damages.

Second, Ross argues that Hathaway is estopped from requesting different amounts of back pay than she stated she was seeking in the pre-trial order in this action. The pre-trial order in the instant action, however, was not signed by the court. In addition, Hathaway is not materially changing her positions or arguments in any way, such as if she was now seeking to recover a type of damages that she never requested or was seeking to proceed on entirely new theories. Rather, Hathaway has simply articulated the specific amount of damages that she believes she is owed, and therefore Hathaway will not be precluded from requesting the appropriate award of damages based on the evidence that was presented at trial.

Third, and finally, Ross argues that Hathaway should only be awarded back pay up to December 31, 2003, when Ross claims it was closed for business. Hathaway argues that she should receive back pay up to the date of judgment because Ross did not actually close on December 31, 2003. In support of this claim, Hathaway points to the testimony of one former Ross employee who was hired by the Liposuction Institute, where Doctor David Ross ("Dr. Ross") is now employed. Hathaway also attached to her reply brief a printout of the Illinois Secretary of

8

State's web site, which shows that Ross is still a corporation in good standing in Illinois. (Ex. J). The issue here, however, is not whether Ross is still an existing corporation. Rather, the question is whether Hathaway can show that she reasonably would have been employed by Ross past December 31, 2003. *See Ilona*, 108 F.3d at 1579 (stating that a plaintiff can recover "what she would have earned absent the discrimination"). In the instant action, the evidence at trial showed that only one of Ross' nineteen employees moved to the Liposuction Institute with Dr. Ross. Ross' office manager testified that at the end of 2003, she and two other employees were the last Ross employees, and that their employment ended on December 31, 2003, when Ross ceased to operate as a business. Therefore, we find that Hathaway has not shown that, absent her termination, she would have been employed by Ross past December 31, 2003, and, thus, Hathaway's back pay award will be limited to the period of time between her termination and December 31, 2003.

In conclusion, we find that Hathaway is entitled to an award of back pay based on her 2000 salary of $49,653.00 plus an annual increase of fifteen percent, calculated from the time of her termination in February 2002, to December 31, 2003. This comes to an award of $53,288.88 for the portion of 2002 after Hathaway's termination, and $65,666.09 for 2003, totaling an award of $118,954.97 in back pay. In addition, we find that Hathaway's award of back pay should not be reduced by the amounts she received from unemployment benefits or for the time she would have been unavailable to work due to her pregnancy. We will, however, reduce the award

9

of back pay by $18,514.00, which is the amount Hathaway earned from other employment in 2003. Therefore, we award Hathaway a total of $100,440.97 in back pay.

III. Fringe Benefits

Hathaway is seeking $186,689.91 in fringe benefits, based on a statement at trial by Dr. Ross that her fringe benefits cost Ross as much as her salary. Hathaway, as the plaintiff, has the burden of showing her damages and has failed to attach any support for her claim regarding fringe benefits. In addition, a plaintiff can only recover for fringe benefits that she replaces on her own. *See Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149, 161 (7th Cir. 1981)(affirming a district court's decision to "refuse[] . . . to include lost health insurance benefits in [a damages] award because [the plaintiff] had not purchased alternate coverage)(reversed on other grounds in *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988)). Hathaway has not shown that she replaced any of the fringe benefits that she may have received from Ross, except for the $1,238.97 in insurance costs that she discusses in the pre-trial order, which Ross does not object to her recovering. (Resp. 12). Finally, we note that we have already compensated Hathaway in our award of back pay for the time that she would have been on maternity leave or otherwise unavailable to work due to her pregnancy, including the paid vacation time that she lost. Therefore, we award Hathaway $1,238.97 in fringe benefits.

IV. Pre-Judgment Interest

Hathaway is seeking pre-judgment interest on her back pay award. Ross cites *Reich v. Sea Sprite Boat Co., Inc.*, 64 F.3d 332, 333 (7th Cir 1995), for the idea that punitive damages "sometimes serve[] in lieu of prejudgment interest on the compensatory portion of the award." *Reich.*, 64 F.3d at 333. The Seventh Circuit has also stated, however, that "[i]f a district court does have discretion in whether to grant or deny prejudgment interest, that discretion is very limited [and] 'that prejudgment interest should be presumptively available to victims of federal law violation.'" *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1046 (7th Cir. 1994)(quoting *Gorenstein Enterprises v. Quality Care-USA*, 874 F.2d 431, 436 (7th Cir. 1989)).

The Seventh Circuit has stated that "'district judges [should] use the prime rate for fixing prejudgment interest where there is no statutory interest rate.'" *See Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 820 (7th Cir. 2002)(quoting *Gorenstein Enterprises*, 874 F.2d at 436). Hathaway has requested in her motion for damages an amount of pre-judgment interest, which is calculated at a rate of 8.59 percent. In support of her request, Hathaway has submitted information which reflects that the average prime rate from 2002 through March 2006, was 5.78 percent. (H Ex. E). The court finds that an interest rate of 5.78 percent based on the average prime rate is appropriate and reasonable for pre-judgment interest. Therefore, we award Hathaway pre-judgment interest of $5,805.49, calculated at a

5.78 percent, on her back pay award of $100,440.97.

V. Front Pay

Finally, Hathaway is seeking "at least $600,000" in front pay or, in the alternative, $295,361.18 in "future wage loss" damages. (Mot. 8-9). The Seventh Circuit has held that a plaintiff may recover front pay damages in Title VII cases "when reinstatement is not available or not advisable because of workplace incompatibility." *Shick v. Illinois Dept. of Human Serv.,* 307 F.3d 605, 614 (7th Cir. 2002). An award of front pay is intended "to compensate discrimination victims for the reasonable time it would take to find comparable employment elsewhere." *Id.* However, an award of front pay is not automatic, and " is only designed to compensate a plaintiff from the lost earnings from his old job for as long as he 'may have been expected to hold it.'" *Id.*

In the instant action, Hathaway is seeking front pay for ten years, beginning in 2006. However, as discussed above, Hathaway has not shown that she could have reasonably expected to be employed by Ross past December 31, 2003. Hathaway has also provided evidence to the court showing that she has been employed since 2003, earning amounts that are comparable to her salary at Ross. (Ex. C). Therefore, we find that Hathaway is not entitled to an award of front pay.

Hathaway also requests, in the alternative, "future wage loss" damages, which she distinguishes from front pay damages. (Mot. 8-9). Hathaway appears to

calculate her request for future wage loss damages by computing the difference between her earnings after she was terminated and the earnings she claims she would have earned if she had not been terminated by Ross. Hathaway's wage loss damages calculation, however, is how front pay damages are properly calculated in any case, and, for the reasons that we stated above, we deny Hathaway's request for future wage loss damages.

VI. Motion to Strike

Ross has filed a motion to strike Hathaway's exhibits J and K, as well as sections III.B and IV of Hathaway's reply memorandum. Because the documents and the arguments contained in sections III.B and IV did not affect the outcome of this opinion, we deny Ross' motion to strike as moot.

**CONCLUSION**

Based on the foregoing analysis, we grant in part and deny in part Hathaway's motion for damages. Specifically, we grant Hathaway $100,440.97 in back pay, plus $5,805.49 in pre-judgment interest and $1,238.97 in fringe benefits. Judgment is entered in favor of Plaintiff Hathaway and against Defendant Ross by the court in the amount of $107,484.43 for back pay, including pre-judgment interest on back pay and fringe benefits. Hathaway is also entitled to $70,000 in compensatory damages that was awarded by the jury and not subject to the damages cap, and

$50,000 that was awarded by the jury under the damages cap, which we considered as punitive damages based on the agreement of the parties. Judgment is entered in favor of Plaintiff Hathaway and against Defendant Ross as reflected by the jury's verdict in the amount of $120,000 for compensatory and punitive damages. The total amount of damages that Hathaway was awarded by both the jury and the court is $227,484.43.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 6, 2006